W. H. REMINGTON AND OTHERS, APPELLANTS, *v.* JOHN
L. WEBER, SHERIFF OF SUMMIT COUNTY, AND OTHERS,
RESPONDENTS.[1]

SHERIFF.—ATTACHMENT.—PRIORITY OF LEVIES UNDER DIFFERENT
WRITS.—WRITTEN INSTRUCTIONS TO OFFICER UNDER STATUTE.—
The sheriff having the entire stock of goods of a merchandis-
ing firm, with the books of account in his possession under
attachment, received plaintiffs' writ and levied the same sub-
ject to the prior writs, and on the following day he received
the writ of S. and proceeded to levy the same subject to all
prior writs. 2 Comp. Laws 1888, section 3314, provides: "Upon
receiving information in writing from the plaintiff, or his at-
torney, that any person has in possession or under his control
any credits or other personal property belonging to the de-
fendant, or is owing any debt to defendant, the officer making
the service must serve upon such person a copy of the writ."
Plaintiffs' attorney instructed the sheriff in writing to garnish
certain persons named therein, and left blank spaces in the

[1] Re-hearing denied April 27, 1895.

letter above their signature, and instructed him on another
sheet of paper to insert the names of the debtors of the firm
as shown by the books, into the blank spaces and garnish them
and to attach the books of the firm.  Upon the same day that
the sheriff received these instructions the attorney for S.
obtained possession of the books of accounts, from the sheriff,
and from these obtained the names of the debtors of the firm,
and filled out writs of attachment and handed them to the
sheriff instructing him orally to garnish the debtors of the
firm whose names he had obtained from the books.  *Held,*
that the sheriff was justified in applying the money received
from the garnishees on the execution of S.

(No. 544.  Decided March 16, 1895.  39 P. R. 822.)

APPEAL from the District Court of the Third Judicial
District.  Hon. Samuel A. Merritt, *Judge.*

Action by Remington, Johnson & Company, against John
L. Weber, sheriff of Summit county, and others.  The
cause was referred to R. H. Cabell, Esq., referee, who
found in favor of the plaintiffs on the second, and in
favor of the defendants on the first cause of action stated
in the complaint.  From an order overruling plaintiffs'
motion for a new trial on the first cause of action and
from the judgment entered thereon, they appeal.  *Affirmed.*

In addition to the facts in the opinion the record shows
the following:  The sheriff in his return to the writ in the
Smith case, stated:  "I further return, I levied the same
upon and attached the following sums of money in the
hands of the following named persons, whom the books of
said defendants, then in my possession, showed were so
indebted to said defendants, viz:" (then giving the names
of the various persons and the amounts for which each
was garnished.)  The Remington writ was levied upon the
16th day of November, 1891, and the Smith writ upon the
following day.  From the proceeds of the sale of the goods,

wares and merchandise of the firm, the sheriff paid in full the judgments of the prior attaching creditors and part of plaintiffs', leaving a balance of $574.71.

*James A. Williams,* for appellants.

The return of the sheriff shows that he garnished the various persons mentioned upon his own motion and without any written instructions. The referee and the court erred in permitting testimony contradicting and varying this return. The exceptions to this testimony is saved in the first bill of exceptions in the record. This is not a contest between plaintiffs and Smith & Company, but between plaintiffs and the sheriff. The sheriff having made this return, he is bound by it. If he garnished these persons on his own motion then plaintiffs are entitled to the money, as their writ is prior in point of time and the sheriff is liable for its misappropriation. "An officer cannot, as a matter of right, amend a return he has once duly made. This would place at his discretion the verity and consistency of records and the effect and authority of the most solemn judgments." Drake on Att. § 213. "He (sheriff) cannot be permitted to make out evidence for himself when sued for official wrong doing by amending his return after it has been duly made." Waples on Att. §§ 260–261. "The officer has entire control over the return until it has been filed. The court cannot dictate to him what facts to report, and after the filing neither the officer at his own volition nor the court by directing the officer, can make any change that would affect the vested right of any party. The officer must abide his action, though to his injury." Id. § 264. "As a general rule, the officer will not be permitted to amend his return, so as to render it competent evidence in his own behalf, in an action against him for breach of duty in connection with the attachment." 1

Wade on Att. § 154.    See, also, 22 Enc. of Law, 192–3, 196–7; Drake on Att. § 219.

The testimony of Weber and Snyder as shown by the bill of exceptions contradicts the facts stated by the sheriff in his return, and makes the sheriff garnish the persons upon written information from the attorney in the Smith case instead of garnishing from the books of the firm in his possession at his own instigation.    In *Harvey* v. *Foster*, 30 P. R. (Cal.) 849, the sheriff in a foreclosure proceeding, having returned that the property brought a certain sum, the same being greater than the mortgage indebtedness and costs, was sued by the attaching creditor for the balance in his hands, and it was held that he was concluded by his return showing such excess, that he could not contradict his return showing that he did not receive that much money.    The court says: "The sheriff's return to the order of sale shows that he received at the mortgage sale the sum of $15,700.15 cash.    He cannot make any defense inconsistent with his return.    Freem. Ex' ns, 450; *Ferguson* v. *Tutt*, 8 Kan. 370.    A sheriff is concluded in his return when it is set up by any party who may claim something under it.    Crock. Sher., 46." "As against the officer who made it, a return as long as it remains unvacated is conclusive.    He will not be permitted to contradict or to show its falsity in any material respect."    Id. § 366.    Freeman on Ex'ns, § 364. The second bill of exceptions in the record saves appellants' exceptions before the court for not striking out certain conclusions of law and substituting others, which appellants contend would be properly supported by the findings of fact.    Appellants further contend that the judgment roll and findings do not support the judgment; that the sheriff having obtained entire control of the firm's stock of goods and books of accounts, and having in his hands several attachments, it was his duty, without any

written instructions from any one, to garnish the debtors of the firm, as shown by the books of account, and apply the moneys thus received from the garnishees in satisfaction of the several executions according to the priority of the levy of the writs in each case.

All writs prior to plaintiffs' having been satisfied, and part of the proceeds from the sale of goods having been applied in satisfaction of their execution, they were entitled to the first money received from the garnishees until their writ was satisfied in full.     This principle is clearly established under a similar statute to ours in Montana.     See *Milling Co.* v. *Jeffries,* 35 Pac. Rep. 908.     In this case Pemberton, C. J., says: "Why was it necessary to give the respondent notice in writing to garnish any of the debtors of said firm? He had possession of the books of account of said firm under the writs of attachment in his hands.     He had all the information necessary as to who were the debtors of the firm.     The books of account of the attached firm gave him that information.     It was his duty under the law, to attach without delay all the property of the defendants in his county not exempt from execution, or so much thereof as would be sufficient to pay the demand of the plaintiff.     The debts of the firm were as much property and as much subject to attachment as any character of property."     Now this case is directly in point, but unfortunately counsel for plaintiffs did not discover it in time to use it before the referee or the lower court.     Had he done so, the judgment in the first cause of action would have been different.     On this case alone, appellants are entitled to a judgment in their favor, from the findings.

*Mr. Wilson I. Snyder,* for respondents.

Under 2 Comp. Laws 1888, § 3314, which provides;

"Upon receiving information  *   *   *   the officer making the service must serve upon such person a copy of the writ  *   *   *   ." It is the information in writing and not the possession of the writ which directs and controls the action of the officer in such cases. The order of precedence is governed by the validity of the levy. Subsequent valid levies necessarily exclude those prior in point of time but wanting in compliance with the law in essential particulars. 1 Am. & Eng. Enc. p. 927, note 3, citing Wade Att. § 219; *Robinson* v. *Ensign,* 6 Gray (Mass.), 300; *Culver* v. *Rumsey,* 6 Ill. App. 598; see *Brown* v. *Clark,* 4 How. U. S. 9; Id. 12; see Wade, *supra,* notes 1 to 4, 16-17, Murf. Sher. § 616. All the requirements of the statute must be complied with, and if failure is made in this particular, he who fails must pay the penalty. 2 Freem. Ex. 262*a,* p. 835, n. 2; Id. 271-271*b;* Murfree Sher. § 189. Respectable courts have held that the sheriff may show in defense the instructions of plaintiff. Murf. Sher. § 968. Respondents contend with becoming deference to the Montana court that the decision of *Milling Co.* v. *Jeffries,* 35 Pac. Rep. 908, is not the correct reasoning of the law, and that the conclusions reached by the court not only leaves the section of statute under consideration without any practical force or use whatever, but flies full in the face of it. "It is not presumed that the legislature intended any part of a statute to be without meaning." Suth. Stat. Con. p. 412, § 325, n. 4; 7 Lawson Rem. § 3773 pp. 5923-24. The record shows that plaintiffs accepted satisfaction of judgment in the second cause of action. The action is of such a nature that there was but one cause of action, and having executed the judgment, he cannot now appeal from it. "A party cannot claim the benefits of a judgment and at the same time appeal from it." *Portland Const. Co.* v. *O'Neil,* 32 Pac. (Or.) 764; *Moore* v. *Floyd,* 4 Or.

260; Freem. Judg. §§ 462–466; *Ehrman* v. *Astoria &
Pac. Ry. Co.* 38 Pac. 306; *Avendano* v. *Gay*, 8 Wall.
(19 L. Ed.) 422; *Flowers* v. *Hughes* (La.), 15 So. 14.
"One, who, after appealing from a decree in his favor,
voluntarily accepts the benefits of the decree, is precluded
from prosecuting his appeal." *Hart* v. *Castletter* (Neb.),
57 N. W. 381. Appellants must either take their judg-
ment, or not take it. They are bound by their election.
Bige. Est. 3 ed. p. 562, c. 19; *Thomas* v. *Joslin*, 1 Am.
St. Rep. 624 and cases cited, p. 626; *Hayes* v. *Midas*, 104
N. Y. 602.

## APPELLANTS IN REPLY.

There were clearly two causes of action stated in the com-
plaint. There was a judgment in each cause of action.
The plaintiffs recovered in the one and the defendants in
the other. Plaintiffs appeal from the judgment in the first
cause of action which was in favor of the defendants and
so limited his appeal by the notice of appeal, but an appeal
may be taken from a specific part of a judgment or order.
2 Comp. Laws, 1888, § 3636; Hayne on New Trial, §
185 and authorities cited; *Coombs* v. *Railway Co.*, 9 Utah,
322, S. C. 34 Pac. Rep. 248, S. C. on second appeal, *ante*,
p. 137. 39 Pac. Rep. 503; see also Pom. Rem. & Rem.
Rights, §§ 41, 62, 63; 2 Comp. Laws 1888, §§ 3340–3342. If
this cause should be reversed on this appeal and sent back
for a new trial, only the questions raised by the appeal would
be the subject of investigation on the new trial. *Shook* v.
*Colohan*, 6 Pac. 503; *Portland* v. *O'Neil*, 32 Pac. 764;
*Flowers* v. *Hughes*, 15 S. R. 14; *Laird* v. *Giffen*, 54 N. W.
584; *Hart* v. *Castetter*, 57 N. W. 381. There is not only
reversible error in the record but the findings do not sup-
port the judgment, in that it was the sheriff's duty to
have paid the money received on the garnishments in sat-

-isfaction of appellants' execution under the ruling in the
Montana case.

SMITH, J.:

This action was commenced against the defendant by
the plaintiffs to recover, on what is claimed to be the first
cause of action, the sum of $600. It is alleged that the
plaintiffs are entitled to recover this amount by reason of
the fact that the sheriff wrongfully, illegally, and unlaw-
fully conducted himself in the service of certain attach-
ments in favor of the plaintiffs and against the firm of
Young & Adderly. The plaintiffs sued out an attachment
against Young & Adderly, who were merchants in Park
City, and delivered the writ of attachment to the defend-
ant for service. He levied upon a stock of goods under
such attachment, and also seized the account books of the
firm of Young & Adderly. Upon the same day that the
account books were seized, M. E. Smith & Co. sued out
an attachment against Young & Adderly. The attorneys
for plaintiffs lived in Salt Lake City, while the attorney
for Smith & Co. lived in Park City. The attachment in
favor of the plaintiffs was levied on the 16th day of
November, 1891, and the attachment in favor of M. E.
Smith & Co. was levied upon the same property on the
17th day of November, 1891. Under this attachment in
favor of Smith & Co. the defendant garnished some 25
persons owing money to the firm of Young & Adderly,
and from these garnishees afterwards collected $454. He
paid this money over to Smith & Co., and this money is
the subject of controversy upon this appeal. The facts, so
far as they are necessary to be further stated, are that
Williams & Bonta, attorneys for the plaintiffs, on the 17th
day of November, sent a letter to defendant, Weber,
telling him to garnish two certain mining companies,
debtors of Young & Adderly, naming them, and then,

leaving certain blank lines in their letter, instructed the sheriff on another sheet of paper to fill in the names of all persons who owed the firm of Young & Adderly into the blank spaces, and garnish them; the sheriff at the time having seized the books of account. On the same day (but it is doubtful which was received first) Smith & Co., by their attorney, handed to the sheriff writs of attachment, filled out, and directed the sheriff to garnish the persons mentioned in his return, and from whom he subsequently collected the money. It is admitted that Snyder had gotten the names of those persons from the books of account which the sheriff had in his possession.

Section 3314 of the Compiled Laws of Utah provides: "Upon receiving information in writing from the plaintiff or his attorney that any person has in his possession or under his control, any credits, or other personal property belonging to the defendant, or is owing any debt to defendant, the officer making the service must serve upon such person a copy of the writ," etc. It is not disputed by the appellants, as we understand it, that the directions given by the attorney of Smith & Co. to the sheriff was a complete compliance with this statute, and it is not denied that the sheriff had the Remington writ in his hands before he received the Smith writ. The only point of serious controversy is whether, under the facts, the Remington writ should be considered as levied upon the debts in the hands of the garnishees prior to the Smith writ. There was no direction in writing from the attorney of Remington to garnish these particular persons. His letter was written containing the names of two garnishees, and there is no question about them in this case, and the blank space was left, with the direction to the sheriff to fill in the names of the other debtors of Young & Adderly from the books in his possession. We think, under the statute just cited, that it is the information in writing from the

plaintiff or his attorney which directs and controls the action of the officer in serving the garnishees. The provision of the statute is undoubtedly for the protection of the officer to prevent his being sued for not levying the writ. This being so, it would seem to follow that the benefits of the statute only accrue to him who complies with it. The officer is not required to do anything except pursuant to the statute, and the plaintiff who does not give him the statutory direction cannot complain if he fails to make the levy upon the writ in his favor. 2 Freem. Ex'ns, 262. We do not intend to hold—because it is not necessary to a decision in this case—that the sheriff would not, under any circumstances, be liable for a failure to serve the garnishment when he received no instructions in writing; but where, upon the same day, he receives two writs of attachment, one accompanied by the proper instructions and the other not accompanied by such instructions, what we do hold is that it is his duty to obey the instructions of the more vigilant attaching creditor. The court below held that the plaintiffs were entitled to recover nothing upon this cause of action. We think this conclusion is correct.

Many other questions are raised upon the appeal, which we do not deem it necessary to discuss in this action, as the question we have decided seems to dispose of it. A motion was made to dismiss the appeal for the reason that the plaintiffs had accepted satisfaction of judgment against the defendant, rendered in the court below upon a so-called "second cause of action." It is not necessary to decide, in this case, whether the second claim or item set out in the complaint, and for which the plaintiffs recovered judgment, is properly stated as a second cause of action. It may well be doubted whether this action is anything more than an action against the sheriff for false return, and the cause of action single. However, as we think the judg-

ment should be affirmed upon the merits, it is not neces-
sary to dispose of the motion to dismiss the appeal.  The
judgment is affirmed.

BARTCH and KING, JJ., concur.